## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | |
|---|---|
| --------------------------------------------------x | Chapter 11 |
| In re: : | |
| : | Case No. 18-71145-BHL-11 |
| Buehler, Inc., *et al.*[1] : | |
| : | (Joint Administration Pending) |
| Debtors. : | |
| --------------------------------------------------x | Honorable Basil H. Lorch III |

**FIRST-DAY MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION
FOR ENTRY AN ORDER UNDER 11 U.S.C. §§ 105, 361, 362, AND 363,
RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE,
AND RULE B-4001-2 OF THE LOCAL RULES OF THE UNITED STATES
BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF INDIANA (I)
AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL ON AN INTERIM
BASIS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN OF THE
DEBTORS' PREPETITION SECURED CREDITORS, AND (III) SCHEDULING A
FINAL HEARING TO CONSIDER THE DEBTORS' USE OF CASH COLLATERAL**

Buehler, Inc. and Buehler, LLC (together, the "Debtors"), the debtors and debtors in

possession in the above-captioned chapter 11 cases, by and through their undersigned counsel,

hereby move (the "Motion") under sections 105, 361, 362, 363 and 364 of title 11 of the United

States Code (the "Bankruptcy Code"), rule 4001 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and rule B-4001-2 of the Local Rules of the United States Bankruptcy

Court for the Southern District of Indiana (the "Local Rules"), for entry of an order (the "Cash

Collateral Order") (i) authorizing the Debtors' use of cash collateral on an interim basis, (ii)

granting adequate protection to the Debtors' prepetition secured lenders, and (iii) and scheduling

a final hearing to consider the Debtor's use of cash collateral.  In support of the Motion, the

Debtors rely upon and incorporate by reference the *Declaration of David Buehler In Support of*

*Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "First Day Declaration").  In

---

[1]     The last four digits of Buehler, Inc.'s and Buehler, LLC's taxpayer identification numbers are (6060) and
(0204), respectively.  The Debtors' mailing address is 307 Newton Street, Jasper, IN 47546.

further support of the Motion, the Debtors respectfully represent as follows:

<strong><u>Jurisdiction and Venue</u></strong>

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

<strong><u>Background</u></strong>

**A.      The Chapter 11 Case**

2.      On October 17, 2018 (the "<u>Petition Date</u>"), both of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Indiana (the "<u>Bankruptcy Court</u>").  The Debtors continue to manage and operate their business as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  To date, the Office of the United States Trustee (the "<u>U.S. Trustee</u>") has not appointed an official committee of unsecured creditors in this chapter 11 bankruptcy case (the "<u>Chapter 11 Cases</u>").  No trustee or examiner has been appointed in the Chapter 11 Cases.

3.      The Debtors are Indiana companies with their principal place of business in Jasper, Indiana.  The Debtors operate a chain of 15 grocery stores located in Indiana, Kentucky and Illinois.

4.      As set forth in the First Day Declaration, the Debtors are in an extremely competitive industry and their pre-Petition Date efforts to restructure have been unsuccessful. Indeed, the Debtors' ultimate equity owner loaned the Debtors hundreds of thousands of dollars in unsecured notes in 2018 alone, but the Debtors still faced an immediate liquidity crisis that necessitated the commencement of the Chapter 11 Cases.  The Debtors intend to use the remedies available to them under the Bankruptcy Code to close certain unprofitable stores, reject

2

burdensome executory contracts, reduce their trade debt, and reorganize around their high-performing stores with the support of the Debtors' key creditor constituencies.

**B.     The Debtors' Secured Debt**

5.      The Debtors' primary lender and secured creditor is Old National Bank ("ONB"). As of the Petition Date, ONB holds a claim in an approximate amount of $491,154.96 (the "ONB Claim"). The ONB Claim has two components. First, $91,154.96 outstanding under the terms of a Promissory Note dated July 30, 2014 between Buehler, Inc. and ONB. Second, approximately $400,000 outstanding under the terms of a Promissory Note dated August 7 2018 between Buehler, Inc. and ONB. The ONB Claim is secured by a blanket lien on substantially all of Buehler, Inc.'s assets (the "Prepetition Collateral").

6.      In addition to the ONB Claim, the Debtors' primary vendors, Moran Foods, LLC ("Moran"), and Associated Wholesale Grocers, Inc. ("AWG") each assert a security interest on certain of the Debtors' assets. Moran alleges that it holds a claim in the approximate amount of $459,458, which is based on Moran's pre-Petition Date sale of goods and services to the Debtors. Moran's claim is purportedly secured by: (i) a lien on all assets of the Debtors of every kind and nature, including accounts, accounts receivable, and inventory arising in connection with the Debtors' store located at 1311 S. Shelby Street, Louisville, KY 40217 (the "Shelby Store"); (ii) a lien on all assets of the Debtors of every kind and nature, including accounts, accounts receivable, and inventory arising in connection with the Debtors' store located at 300 Southeast 21st Street, Washington, IN 47501 (the "Washington Store"); and (iii) certain deposits that the Debtors have made with Moran in the aggregate amount of $278,898.91. By separate motion, the Debtors are seeking entry of an order authorizing, but not directing, them to satisfy the administrative and trust claims held by Moran based upon, among other things section 503(b)(9)

of the Bankruptcy Code and the Perishable Agricultural Commodities Act.  To the extent that motion is granted, Moran's pre-Petition Date claim against the Debtors will be reduced by approximately $325,270.44.  Accordingly, Moran's pre-Petition Date claim will be far less than the amount of deposits held by Moran as collateral.

7.       AWG holds a secured claim in an approximate amount of $349,746.55, which is comprised of $124,794.70 due under the terms of a note as well as $224,951.85 based on AWG's pre-Petition Date sale of goods and services to the Debtors.  AWG's claim is secured by: (i) a lien on Buehler, Inc.'s investment property, instruments and general intangibles, including presumably Buehler, Inc.'s membership interests in Buehler, LLC; (ii) a lien on all of the merchandise, supplies inventory, goods, documents, instruments, general intangibles, chattel paper, accounts, etc. related to the Debtors' grocery store located at 3044 Wilson Avenue, Louisville, KY 40211 (the "Park DuValle Store"); (iii) certain equity interests in AWG owned by the Debtors; (iv) certain rebates or credits owed by AWG to the Debtors; and (v) certain deposits that the Debtors have made with AWG in the aggregate amount of $70,565.38.  By separate motion, the Debtors are seeking entry of an order authorizing, but not directing, them to satisfy the administrative and trust claims held by AWG based upon, among other things section 503(b)(9) of the Bankruptcy Code and the Perishable Agricultural Commodities Act.  To the extent that motion is granted, AWG's pre-Petition Date claim against the Debtors will be reduced by approximately $216,765.72.

8.       Substantially all of the Debtors' cash, including, without limitation, all cash and other amounts on deposit or maintained by the debtors in any account or accounts with ONB or the Debtors' other banks, and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of ONB,

4

within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").  Likewise, to the extent that the Debtors have cash accounts and will generate proceeds from sales at the Shelby Store, Washington Store and Park DuValle Store, any cash and cash proceeds is the Cash Collateral of Moran and AWG to the extent of their junior liens.

9.      In addition to ONB's, Moran's and AWG's interests in the Cash Collateral, certain of the Debtors' creditors that have sold or leased equipment to the Debtors (together, the "Other Trade Creditors").  The Other Secured Creditors hold claims against the Debtors that are secured by the equipment.  Although the Other Secured Creditors claims are secured by the equipment and the proceeds thereof, the Other Secured Creditors' claims are not secured by the Debtors' cash.

**Relief Requested**

10.     By this Motion, the Debtors seek entry of the Cash Collateral Order which will: (i) authorize the Debtors' use of Cash Collateral on an interim basis; (ii) provide adequate protection to ONB and AWG in an amount equal to the aggregate diminution in value of their interests in the Cash Collateral from the use of the Cash Collateral in the form of replacement liens and super-priority administrative expense claims; and (iii) setting a hearing for a final determination regarding the Debtors' use of Cash Collateral and prescribing the form and manner of notice thereof.

11.     Attached hereto, in compliance with Local Rule B-4001-1(c), as **Exhibit A** is a copy of the budget setting forth the Debtors' proposed use of Cash Collateral (the "Budget") from the Petition Date through the week ending on January 26, 2019.  In addition, the following chart contains a summary of the essential terms of the Debtors' proposed use of Cash Collateral, together with references to the applicable sections of Bankruptcy Rules 4001(b)(1)(B) and Local

Rule B-4001-1:

| | |
|---|---|
| **Debtors**<br>*Bankruptcy Rule 4001(b)(1)(B)* | Buehler, Inc.<br>Buehler, LLC |
| **Parties with an Interest in Cash Collateral**<br>*Bankruptcy Rule 4001(b)(1)(B)* | Old National Bank<br>Moran Foods, LLC<br>Associated Wholesale Grocers, Inc. |
| **Amount of Cash Collateral to Be Used**<br>*Local Rule B-4001-1(c)* | *See* Budget attached as **Exhibit A**. |
| **Estimated Value of the Collateral**<br>*Local Rule B-4001-1(c)* | Unknown |
| **Purposes of the Use of Cash Collateral and Postpetition Financing**<br>*Bankruptcy Rule 4001(b)(1)(B) and Local Rule B-4001-1(c)* | The Debtor is hereby authorized to use the Cash Collateral until the termination date only for working capital, general corporate purposes and administrative costs and expenses of the Debtor in the ordinary course of business and, in each case, subject to the Budget and the terms and conditions of the Cash Collateral Order. The Debtor's use of Cash Collateral and other cash and cash equivalents shall be consistent with the types of expenses set forth in the Budget. ONB, Moran, and AWG shall have no obligation with respect to the Debtor's use of Cash Collateral, and shall not be obligated to ensure or monitor the Debtor's compliance with the Budget or to pay (directly or indirectly from the Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget. |
| **Adequate Protection**<br>*Bankruptcy Rule 4001(b)(1)(B) and Local Rule B-4001-1(c)* | Replacement Liens. ONB, Moran and AWG may be entitled to adequate protection of their interests in the Prepetition Collateral, for any diminution in value of the Cash Collateral from the use of Cash Collateral. As adequate protection for the Debtors' use of Cash Collateral, the Debtors shall grant ONB, Moran and AWG the Replacement Liens |

19671568.3

|  | (defined below) on all property that is of the same nature and type as the Prepetition Collateral, in the same priority as their respective liens existed as of the Petition Date; provided, however, that the Replacement Liens shall not attach to Avoidance Actions (defined below) or their proceeds and shall be subordinate to the Carve-Out (defined below).  For the avoidance of doubt, AWG's replacement lien is limited to the nature of its collateral related to the Park DuValle Store, and Moran's replacement lien is limited to the nature of its collateral related to the Shelby Store and Washington Store.  To the extent that the Shelby Store will be closed, the inventory and other Moran collateral located there after the store closing will only remain at that location or be moved to the Washington Store, absent a Court order to the contrary.<br><br>ONB Administrative Claim.  ONB and Moran shall be granted a super-priority administrative expense claim under section 507(b) of the Bankruptcy Code.<br><br>Post-Petition Date Interest Payments.  The Debtors will make interest only payments to ONB on a monthly basis.  For the avoidance of doubt, the interest is calculated at the rate of 6.25% per annum. |
|---|---|
| **Termination Date**<br>*Bankruptcy Rule 4001(b)(1)(B) and Local Rule B-4001-1(c)* | The Debtors' right to use Cash Collateral shall terminate upon the entry of an order (a) directing the appointment of a trustee for the Debtors, (b) dismissing or converting this case to a case under Chapter 7, (c) determining that the Debtor is in default of its obligations under the Cash Collateral Order granting this Motion or a future motion for the continued use of Cash Collateral. |

19671568.3

| | |
|---|---|
| **Admission of the Extent, Validity and Priority of Claims** | The Debtors stipulate as follows: (i) ONB's lien on Buehler, Inc.'s collateral is a valid, binding, perfected, enforceable lien and is not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the amount of the ONB Claim constitutes a legal, valid and binding obligation, enforceable in accordance with the terms of the loan documents (other than in respect of the automatic stay arising under section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the claims exist, and no portion of the claims are subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the ONB Claim constitutes an allowable secured claim.  Provided, however, that non-debtors such as David Buehler and any committee that may be appointed in the Chapter 11 Cases reserve all of their rights and remedies. |
| **Modification of the Automatic Stay** *Bankruptcy Rule 4001(b)(1)(B)* | The automatic stay of section 362 of the Bankruptcy Code is hereby modified with respect to ONB, Moran and AWG to the extent necessary to effectuate the provisions of any order authorizing the Debtors' use of Cash Collateral. |

## Basis for Relief Requested

**A.     The Debtor's Use of Cash Collateral Should be Authorized.**

12.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(a) each entity that has an interest in such cash collateral consents or (b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

13.     Here, the Debtors have an immediate need to use Cash Collateral which is the

8

subject of the liens in favor of ONB, Moran, and AWG in order to permit, among other things, the orderly continuation of the operation of the Debtors' business, to maintain business relationships with vendors and suppliers and to satisfy other working capital needs. Use of Cash Collateral is immediately necessary to prevent the immediate and irreparable harm to the Debtors and their respective estates that would otherwise result if the Debtors are prevented from obtaining use of Cash Collateral for the foregoing purposes. Furthermore, ONB, Moran, and AWG have consented to the Debtors' use of Cash Collateral on the terms and conditions set forth in the Cash Collateral Order. Accordingly, based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to use the Cash Collateral in accordance with the terms set forth in the Cash Collateral Order.

**B.     ONB, Moran and AWG Should be Provided Adequate Protection.**

14.     Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which may include additional or replacement liens, periodic cash payments, and other forms of relief. *See* 11 U.S.C. § 361(1). What constitutes adequate protection must be decided on a case-by-case basis. *See, e.g. MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985).

15.     The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See, e.g., In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("[t]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value of which he bargained pre-bankruptcy") (internal citations omitted). Allowing the use of cash collateral is essential to preserve or enhance a debtor's ability to remain a going-concern. *See In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984). The grant

9

of a replacement lien provides ample adequate protection of a secure creditor's interest in cash collateral. *O'Connor*, 808 F.2d at 1397.

16.     ONB, Moran and AWG may be entitled to adequate protection of their interests in the Cash Collateral, for any diminution in value of the Prepetition Collateral from the use of Cash Collateral.  As adequate protection for the Debtors' use of Cash Collateral, the Debtors shall grant ONB, Moran and AWG replacement liens (the "Replacement Liens") on all property that is of the same nature and type as the Prepetition Collateral, in the same priority as their respective liens existed as of the Petition Date; provided, however, that the Replacement Liens shall not attach to Avoidance Actions (defined below) or their proceeds and shall be subordinate to the Carve-Out (defined below). Further, for the avoidance of doubt, AWG's replacement lien is limited to the nature of its collateral related to the Park DuValle Store, and Moran's replacement lien is limited to the nature of its collateral related to the Shelby Store and Washington Store.  To the extent that the Shelby Store will be closed, the inventory and other Moran collateral located there after the store closing will only remain at that location or be moved to the Washington Store, absent a Court order to the contrary.

17.     The Debtors request that the Replacement Liens granted to ONB, Moran and AWG, as well as any super-priority administrative expense claims granted to ONB, Moran and AWG pursuant to the terms of the Cash Collateral Order, be at all times subject and junior to (a) fees due the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees due the Clerk of Court; (c) fees and expenses due to the Debtor's professionals in the amount set forth in the Budget; and (c) following a Termination Event (as defined in the Cash Collateral Order), up to $35,000 in fees and expenses incurred by the Debtor's professionals (collectively, the "Carve-Out").  The Debtors request that the Replacement Liens shall not attach to any claims or causes

19671568.3

of action arising under section 542 through 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") or on or against any proceeds of the Avoidance Actions.

18.     In addition to the Replacement Liens, ONB and Moran shall be entitled to a super-priority administrative expense claim under section 507(b) of the Bankruptcy Code.  ONB shall also be entitled to interest-only payments on the ONB Claim at 6.25%.

19.     The Debtors believe that the proposed adequate protection is fair and reasonable, and necessary under the circumstances.  11 U.S.C. § 361.  The Debtors assert that the proposed adequate protection in the form of replacement liens, administrative expense claims, and interest payments will ensure that their secured are protected from diminution in the value of their interests in the Cash Collateral during the Debtors' use of the Cash Collateral during Chapter 11 Cases, which is necessary to preserve the Debtors' ability to remain a going-concern and successfully reorganize.  ONB, Moran and AWG have consented to the proposed adequate protection.  Accordingly, the Debtors respectfully request that the Court authorize the Debtor to provide certain adequate protections in accordance with the terms set forth in the Cash Collateral Order.

**C.     A Hearing to Grant the Relief Requested Herein On a Final Basis Should Be Scheduled.**

20.     Pursuant to Local Rule B-4001-1(d), the Cash Collateral Order may be entered on an interim basis at this time.  Accordingly, the Debtors requests that by the Cash Collateral Order that the Court schedule a hearing at which the relief requested in this Motion will be considered on a final basis.  The Debtors shall, within three (3) business days of the entry of the Cash Collateral Order by the Court, serve a notice of the final hearing (the "Hearing Notice") by first-class United States Mail on: (i) the U.S. Trustee, (ii) counsel to any official committee appointed in the Chapter 11 Cases; (iii) counsel to Old National Bank; (iv) counsel to Moran Foods, LLC;

(v) counsel to Associated Wholesale Grocers, Inc. (v) the Other Secured Creditors; (vi) the Debtor's twenty largest unsecured creditors; (vii) all of the parties that have requested notice in the Chapter 11 Cases; and (viii) all other parties on the "Service List" as defined in Local Rule B-1000-1(b)(4). The Hearing Notice will contain the date, time and location of the hearing. The Hearing Notice will also inform recipients that any party in interest objecting to the relief sought in this Motion will be required to file and serve an objection, which objection shall: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Indiana not less than seven (7) calendar days before the final hearing (the "Objection Deadline"); and (iv) be served upon the following parties so as to be received by the Objection Deadline: (a) the U.S. Trustee; (b) counsel to any official committee appointed in the Chapter 11 Cases; (c) counsel to Old National Bank, Ziemer, Stayman, Weitzel & Shoulders, LLP, 20 NW First Street, 9th Floor, Evansville, IN 47708, Attn: Nick J. Cirignano; (d) counsel to Moran Foods, LLC, Pepper Hamilton LLP, 19th Floor, High Street Tower, 125 High Street, Boston, MA 02110, Attn: Todd A. Feinsmith; (e) counsel to Associated Wholesale Grocers, Inc., Husch Blackwell LLP, 4801 Main Street, Suite 1000, Kansas City, MO 64112, Attn: Mark T. Benedict; (f) counsel to the Debtors, Bingham Greenebaum Doll LLP, 3500 PNC Tower, 101 South Fifth Street, Louisville, KY 40202, Attn: James R. Irving, April A. Wimberg, and Christopher B. Madden; and (g) all of the parties that have requested notice in the Chapter 11 Cases.

### **Reservation of Rights**

21. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors or lien on assets of the estates, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any

19671568.3

agreement, contract, or lease under section 365 of the Bankruptcy Code.  If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to dispute such claim subsequently except as expressly set forth with respect to the ONB Claim.

## No Prior Request

22.     No previous request for the relief sought herein has been made to this Court or any other Court.

## Conference with the U.S. Trustee and Affected Parties

23.     In compliance with Local Rule B-9013-3(b) of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Rules"), prior to the Petition Date, the Debtors and/or Debtors' counsel conferred with the U.S. Trustee, ONB, Moran, and AWG regarding the Motion and informed such parties that the Debtors would file a cash collateral motion.

## Notice

24.     Notice of this Motion shall be provided to: (i) the U.S. Trustee; (ii) the Debtor's twenty largest creditors; (iii) Old National Bank; (iv) Moran Foods, LLC; (v) Associated Wholesale Grocers, Inc.; (vi) all other parties on the "Service List" required to receive notice of a first day pleading under Local Rules B-1000-1(b)(4) and B-9013-3(d).  Because of the exigencies of the circumstances and the irreparable harm to the Debtors that will ensue if the relief requested is not granted, the Debtors submit that no other notice need be given.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Cash Collateral Order (i) authorizing the Debtor's use of Cash Collateral on an interim basis; (ii) providing adequate protection in the form of replacement liens, super-priority administrative expense claims, and interest only payments; and (iii) setting a hearing for a final determination regarding the Debtor's use of Cash Collateral and prescribing the form and manner of notice thereof.

Dated: October 17, 2018                    Respectfully submitted,

/s/ James R. Irving
James R. Irving
April A. Wimberg
Christopher B. Madden
BINGHAM GREENEBAUM DOLL LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone:      (502) 587-3606
Facsimile:      (502) 540-2215
E-mail:         jirving@bgdlegal.com
                awimberg@bgdlegal.com
                cmadden@bgdlegal.com

*Proposed counsel to the Debtors, Buehler, Inc. and Buehler, LLC*

14

## CERTIFICATE OF SERVICE

I certify that on October 17, 2018, the Motion was served electronically through the Court's ECF system to all persons receiving electronic notifications in the Chapter 11 Cases. Also on October 17, 2018, a copy of the Motion was sent via overnight delivery to the Office of the United States Trustee, ONB, Moran, AWG, the Other Secured Creditors, and the Debtor's twenty largest unsecured creditors, each at the addresses set forth below:

| | |
|---|---|
| Buehler, LLC<br>307 Newton Street<br>Jasper, IN 47546 | Office of the United States Trustee<br>101 West Ohio, Suite 1000<br>Indianapolis, IN 46204 |
| Buehler, Inc.<br>307 Newton Street<br>Jasper, IN 47546 | Nick Cirignano<br>Zeimer, Stayman, Weitzel & Shoulders LLP<br>20 NW First Street, 9th Floor<br>Evansville, IN 47708<br>*Counsel to Old National Bank* |
| Mark T. Benedict<br>Husch Blackwell LLP<br>4801 Main Street, Suite 1000<br>Kansas City, MO 64112-2551<br>*Counsel to Associated Wholesale Grocers, Inc.* | Todd A. Feinsmith<br>Pepper Hamilton LLP<br>19th Floor, High Street Tower<br>125 High Street<br>Boston, MA 02110-2736<br>*Counsel to Moran Foods, LLC* |
| Save-A-Lot, Ltd.<br>100 Corporate Office Drive<br>Earth City, MO 63045<br>Attn: President and CEO, and Legal Dept. | Associated Wholesale Grocers, Inc.<br>5000 Kansas Avenue<br>Kansas City, KS 66106<br>Attn: General Counsel |
| VLMG, A division of Navitas Lease Corp.<br>1719 Route 10 East, Suite 306<br>Parsippany, NJ 07054 | 7up Bottling Company<br>PO Box 504547<br>St. Louis, MO 63150-4547 |
| A2 Advertising<br>161 Saundersville Road, Suite 150<br>Henderson, TN 37075 | Armour-Eckrich Meats LLC<br>2616 Collection Center Dr.<br>Chicago, IL 60693 |
| C&C Custom Cleaning<br>PO Box 583<br>Hendersonville, KY 42348 | Coca Cola Bottling Co.<br>PO Box 602937<br>Charlotte, NC 28260-2937 |
| Cosner's Ice Co.<br>2404 U Street<br>Bedford, IN 47421 | Derby City Distribution<br>4420 Kiln Ct.<br>Louisville, KY 40218 |
| Duke Energy<br>100 E. Main St.<br>Mail Drop WP 890<br>Plainfield, MI 46168 | Flowers Baking Co. of Bardstown<br>PO Box 847871<br>Dallas, TX 75284 |
| Frito-Lay, Inc.<br>PO Box 643104<br>Pittsburgh, PA 15264 | Hadley Comm Refrigeration<br>9075 Payton Rd<br>Greenville, IN 47214 |
| Indianapolis Fruit Co<br>4501 Massachusetts Ave<br>Indianapolis, IN 46218 | Kamin Realty Company<br>PO Box 10234<br>490 South Highland Ave.<br>Pittsburgh, PA 1532 |
| Lipari<br>PO Box 718<br>Warren, MI 48090-0718 | McKee Foods Corporation<br>PO Box 750<br>Collegedale, TN 37315-0750 |
| Nestle USA, Inc.<br>Attn: Legal Dept. | Pepsi Americas, Inc.<br>75 Remittance Dr., Suite 1884 |

15

| | |
|---|---|
| 383 Main Ave., 5th Floor<br>Norwalk, CT 06851 | Chicago, IL 60675-1884 |
| Sherwood Food Distributors<br>12499 Evergreen Road<br>Detroit, MI 48228 | Thomas Refrigeration, Inc.<br>401 E Charlestown Avenue<br>Jeffersonville, IN 47130 |
| Troyer Foods Inc.<br>PO Box 608<br>Goshen, IN 46527-0608 | Washington Foods, Inc.<br>PO Box 308<br>Lawrenceville, IL 62439 |

/s/ James R. Irving

16